IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RANDELL G. SHARP,

                    Plaintiff,

vs.                                    Case No. 09-1405-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties.

**I.   General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's decision

to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 28, 2006, administrative law judge (ALJ) Lantz McClain issued a decision (R. at 31-39). On March 27, 2007, the Appeals Council vacated the decision and remanded the case for further hearing (R. at 42-44). Subsequently, a decision was issued by ALJ Edmund C. Werre on March 24, 2009 (R. at 15-25). Plaintiff alleges that he has been disabled since March 16, 2002 (R. at 15). Plaintiff is insured for disability insurance benefits through September 30, 2009 (R. at 15, 17). At step one,

the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 17).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and impairments of the left upper extremity.  The ALJ further found that plaintiff's mental impairments were not severe (R. at 18).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 23).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err in his evaluation of the medical opinion evidence when determining plaintiff's RFC?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never

seen the claimant is entitled to the least weight of all.

Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When
a treating source opinion is inconsistent with the other medical
evidence, the ALJ's task is to examine the other medical source's
reports to see if they outweigh the treating source's reports,
not the other way around. Treating source opinions are given
particular weight because of their unique perspective to the
medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultive examinations. If an ALJ intends
to rely on a nontreating physician or examiner's opinion, he must
explain the weight he is giving to it. Hamlin v. Barnhart, 365
F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally
sufficient explanation for rejecting the opinion of treating
medical sources in favor of non-examining or consulting medical
sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record. Castellano v. Secretary of
Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating
physician opinion is not given controlling weight, the ALJ must

nonetheless specify what lesser weight he assigned the treating

physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

    Treating source opinions on issues that are reserved to the

Commissioner[1] should be carefully considered and must never be

ignored, but they are never entitled to controlling weight or

_____

    [1]Issues reserved to the Commissioner include: (1) whether an
claimant's impairment meets or is equivalent in severity to a
listed impairment, (2) a claimant's RFC, (3) whether a claimant
can perform past relevant work, and (4) whether a claimant is
disabled.  SSR 96-5p, 1996 WL 374183 at *2.

special significance.  Giving controlling weight to such opinions
would, in effect, confer upon the treating source the authority
to make the determination or decision about whether an individual
is under a disability, and thus would be an abdication of the
Commissioner's statutory responsibility to determine whether an
individual is disabled.  SSR 96-5p, 1996 WL 374183 at *2-3.

The ALJ discussed various medical opinions regarding
plaintiff's RFC (R. at 20-23), including:

> 1. Dr. Murati-independent medical exam on
> October 23, 2003 (R. at 298-302),
>
> 2. Dr. Stein-independent medical exam on June
> 18, 2003 (R. at 417-425), RFC opinion set
> forth on February 23, 2004 (R. at 416),
>
> 3. Dr. Schneider-treating physician, stated
> RFC limitations on Aug. 20, 2005 (R. at 440),
>
> 4. Dr. Sayeed-treating physician, stated RFC
> limitations on Dec. 29, 2008 (R. at 705).

The ALJ made RFC findings that are identical with the
limitations set forth by Dr. Murati (R. at 19, 22, 302), and in
his hypothetical question to the vocational expert (VE), the ALJ
referred the VE to Exhibit 5F, which sets out the opinions of Dr.
Murati (R. at 831).  The ALJ provided the following explanation
for the weight he provided to these opinions:

> As for the opinion evidence, as noted above,
> Dr. Murati's opinion at Exhibit 5F is given
> substantial weight. The opinion of Dr. Stein
> (Exhibit 8F) is given some weight as it is
> generally consistent with the evidence. Dr.
> Schneider's opinion (Exhibit 10F/5) that the
> claimant is limited to 10 pounds and no

complete extension of the left upper
extremity is given little weight. The
claimant testified that he could lift 15 to
25 pounds although it affects his back. Dr.
Sayeed reported that he did not believe that
the claimant would be able to be employed
even part-time. (Exhibit 19F/6) However, this
opinion cannot be credited, as it purports to
determine the ultimate issue of this case, a
determination that is the exclusive province
of the Commissioner (20 CFR 404.1527(e) and
20 CFR 416.927(e)) and is inconsistent with
the claimant's work record.

The Administrative Law Judge has also
considered the opinion of the State agency
reviewing physicians (Exhibit 9F) according
to Social Security Ruling 96-6p. Although the
results are the same at step 5 below, the
residual functional capacity determined in
this decision is less limiting than that of
the reviewing physicians. The Administrative
Law Judge is required to conduct a de novo
hearing and is not bound whatsoever by the
previous disability determinations.

(R. at 22-23).

Exhibit 9F is a state agency RFC assessment that was
prepared on March 23, 2004 (R. at 426-433). In that assessment,
plaintiff was limited to lifting 20 pounds occasionally and 10
pounds frequently (R. at 427). Plaintiff was also found to be
"limited" in his ability to reach in all directions, including
overhead (R. at 429). The 1st ALJ decision also noted this
assessment and made RFC findings that limited plaintiff to light
work with a limitation of reaching in all directions with the
left upper extremity (R. at 35-36).

In the 2nd decision, a different ALJ correctly stated that

he was not bound by the previous disability determination.
However, the ALJ in the 2nd decision did not discuss the
limitations in the RFC assessment of March 23, 2004, and offered
no explanation for not including the limitations in that
assessment in his RFC findings.  When an ALJ rejects a treating
physician's opinion, he must articulate "specific, legitimate
reasons for his decision."  An ALJ must also consider a series of
specific factors in determining what weight to give any medical
opinion.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir.
2004).  According to SSR 96-8p:

> If the RFC assessment conflicts with an
> opinion from a medical source, the
> adjudicator must explain why the opinion was
> not adopted.

1996 WL 374184 at *7.  Furthermore, according to SSR 96-5p:

> Adjudicators must weigh medical source
> statements under the rules set out in 20 CFR
> 404.1527 and 416.927, providing appropriate
> explanations for accepting or rejecting such
> opinions.

1996 WL 374183 at *5.  SSR rulings are binding on an ALJ.  20
C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9,
110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v.
Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

The defendant argues that the state agency assessment
appeared to have been made by a single decision maker (SDM) (Doc.
21 at 9).  An SDM is not a medical professional of any stripe,
and the opinion of an SDM is entitled to no weight as a medical

opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010). However, the ALJ did not indicate that the opinion was written by an SDM, and should therefore be accorded no weight. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Furthermore, there is no evidence in the record indicating that the March 23, 2004 assessment was written by an SDM instead of a medical source. Although the signature on the assessment is not legible, the disability determination and transmittal form, also dated March 23, 2004, includes the name of Dr. Charles Lee (R. at 26). In addition, both ALJ decisions state that the assessment in Exhibit 9F was an opinion from a physician (R. at

11

35, 22-23).  Thus, the evidence in the case and the ALJ findings
indicate that the assessment was prepared by a medical source.

The March 23, 2004 assessment included a limitation that
plaintiff could not engage in reaching in all directions,
including overhead.[2]  The ALJ's RFC finding did not include this
limitation, but did include limitations set forth by Dr. Murati,
including no above chest level/above the shoulder work, no heavy
grasp (more than 40Kg) on the left or work more than 24 inches
from the body on the left, and cannot use hooks, knives, or
vibratory tools on the left (R. at 19, 22).  Thus, the RFC
findings of the ALJ, although they do include some limitations on
reaching, do not state that plaintiff is limited in reaching in
all directions.  The ALJ did not indicate that he incorporated
this limitation in the state agency assessment in his RFC
findings.  In fact, the ALJ, stated that his RFC findings are
"less limiting" than that of the reviewing physicians in the
state agency assessment of March 23, 2004, and that he is not
bound by the previous disability determination (R. at 22-23).
However, the ALJ offered no explanation for not including the
limitation on reaching in the state agency assessment in his RFC
findings.  This failure violates the requirement in SSR 96-8p

---

[2]The earlier decision by another ALJ, immediately after
citing this assessment, made an RFC finding that plaintiff had a
limitation of reaching in all directions with the left upper
extremity (R. at 36).

that the ALJ must explain why this conflicting medical opinion was not included in the RFC assessment.

The ALJ also referenced the opinion of Dr. Schneider, a treating physician, who opined on August 20, 2005 that plaintiff was limited to lifting no more than 10 pounds, and had no complete extension of the left upper extremity due to left elbow pain (R. at 21, 440). The ALJ, without explanation, stated that these opinions were given "little weight" (R. at 22), and a limitation of no complete extension of the left upper extremity was not included in the ALJ's RFC findings. Furthermore, this limitation is consistent with the state agency assessment limiting plaintiff's ability to reach in all directions. As noted earlier, the ALJ must explain why a conflicting medical opinion was not included in the RFC findings. The ALJ must also consider a series of specific factors in the regulations when determining what weight to give any medical opinion, and must provide an appropriate explanation for rejecting such opinions. The ALJ clearly erred by failing to explain why he did not include limitations on reaching set forth by the state agency assessment and Dr. Schneider.

Furthermore, the court cannot say that this failure is clearly harmless error. The ALJ, relying on VE testimony, found that plaintiff could perform the following 4 jobs:

1. car hop          DOT code: 311.477-010
2. stock checker DOT code: 299.667-014

3. bonder          DOT code: 726.685-066
                  4. loader          DOT code: 726.687-030

(R. at 24).  The job of loader requires "constant" (over 2/3 of

the time) reaching, <u>Selected Characteristics of Occupations</u>

<u>Defined in the Revised Dictionary of Occupational Titles</u> (SCO)

(U.S. Dept. of Labor, 1993 at 320, C-3), and the jobs of car hop

and stock checker require "frequent" (1/3 to 2/3 of the time)

reaching.  <u>SCO</u> at 365, 98, C-3.  Only the job of bonder requires

"occasional" (up to 1/3 of the time) reaching.  <u>SCO</u> at 241, C-3.

According to SSR 85-15, reaching is an activity required in

almost all jobs.  Significant limitations in reaching may

eliminate a large number of jobs a person could otherwise

perform, and the assistance of a VE may be needed to determine

the effects of the limitations.  Thus, the limitations on

reaching set forth by Dr. Schneider and the state agency

assessment, which the ALJ did not include in his RFC findings,

could clearly have an impact on plaintiff's ability to perform

the jobs identified by the VE and the ALJ as jobs that plaintiff

could perform.

     The ALJ also found that plaintiff was limited to lifting 35

pounds occasionally and 20 pounds frequently (R. at 19, 22).  As

noted earlier, the state agency assessment limited plaintiff to

lifting 20 pounds occasionally and 10 pounds frequently (R. at

427), while Dr. Schneider limited plaintiff to lifting no more

than 10 pounds (R. at 440).  However, the ALJ relied on the

opinion of Dr. Murati that plaintiff could lift 35 pounds
occasionally and 20 pounds frequently (R. at 302), and the
opinion of Dr. Stein that plaintiff could lift 40 pounds
occasionally and 20 pounds more often (R. at 416).  The ALJ also
discounted the opinion of Dr. Schneider, noting that plaintiff
testified that he could lift 15 to 25 pounds, although it
affected his back (R. at 22, 823-826).   The court will not
reweigh the evidence or substitute its judgment for that of the
Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th
Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th
Cir. 2002).  Although the court will not reweigh the evidence,
the conclusions reached by the ALJ must be reasonable and
consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983,
988 (10th Cir. 1994)(the court must affirm if, considering the
evidence as a whole, there is sufficient evidence which a
reasonable mind might accept as adequate to support a
conclusion).  The court finds that the ALJ's findings regarding
plaintiff's lifting limitations were reasonable and consistent
with the evidence.  Furthermore, the court would note that the
jobs identified by the VE and the ALJ as jobs that plaintiff
could perform were either light or sedentary jobs, which require
lifting no more than 20 pounds occasionally or 10 pounds
frequently.  20 C.F.R. § 404.1567.

The ALJ also noted the December 29, 2008 opinion of Dr.

15

Sayeed, another treating physician, that plaintiff had a
restricted range of motion of the lumbar spine in all directions
and opined that plaintiff would not be able to work, even part-
time (R. at 21-22, 705). However, without explanation, the ALJ
did not include in his RFC that plaintiff had a restricted range
of motion of the lumbar spine in all directions. Again, the ALJ
erred by failing to indicate what weight, if any, he accorded to
this limitation by Dr. Sayeed when making his RFC findings, or
explain why this medical opinion was not included in the ALJ's
RFC findings.[3]

SSR 96-8p requires the ALJ to explain why a medical opinion
that conflicts with the RFC assessment was not adopted. SSR 96-5p
requires the ALJ to consider the various factors set out in the
regulations for weighing medical source opinions and provide
appropriate explanations for accepting or rejecting such
opinions. Therefore, this case shall be remanded in order for
the ALJ to explain why certain medical opinions, including
reaching limitations of the state agency assessment and Dr.
Schneider, and the opinion by Dr. Sayeed that plaintiff had a
restricted range of motion of the lumbar spine in all directions,
were not included in the RFC findings.

---

[3]The ALJ did state that Dr. Sayeed's opinion that plaintiff
would not be able to work was not credited because it was an
opinion on the ultimate issue in the case (R. at 22); however, he
offered no explanation for not including a limitation that
plaintiff had a restricted range of motion in all directions.

The court is also concerned with the ALJ's failure to explain why he adopted the opinion of Dr. Murati while giving little or no weight to the opinions of other medical sources, including two treatment providers.  In the recent case of Andersen v. Astrue, 319 Fed. Appx. 712, 718-719, 722-723 (10th Cir. April 3, 2009), the court held as follows:

> As summarized in Watkins [350 F.3d 1297 (10th Cir. 2003)], the regulatory factors are:
>
> > (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> 350 F.3d at 1301 (internal quotation marks omitted).
>
> Although the ALJ's decision need not include an explicit discussion of each factor, see Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir.2007), the record must reflect that the ALJ considered every factor in the weight calculation.
>
> ..........
>
> We also find that the ALJ's apparent failure to consider any factor other than

supportability makes the ALJ's reasoning
insufficient. It is certainly correct to
consider the amount of objective support for
the conclusions expressed in treating
physicians opinions and the reasoning the
physicians provide. See 20 C.F.R. §
404.1527(d)(3) (noting that the more a
medical source is supported by other
findings, the more weight the source is
given). In this case, however, we cannot
uphold the ALJ's decision based solely on
supportability. There is no indication that
the ALJ considered any relevant factor under
§ 404.1527(d) other than supportability
before assigning these opinions so little
weight. Although supportability might prove
determinative, that can only be decided after
consideration of the other factors. These
include the fact of examination, the length
of the treatment relationship and frequency
of examination, and the nature and extent of
the treatment relationship. See 20 C.F.R. §
404.1527(d)(1)-(2). These factors may not
uniformly weigh in favor of Dr. Wren's and
Dr. Woods's opinions, but they would not be
insignificant here. Regardless, they must be
considered. It is true that the ALJ is under
no obligation to *explicitly discuss* each
factor in the decision. See Oldham, 509 F.3d
at 1258. However, the ALJ's cursory treatment
of the physicians' opinions in this case does
not satisfy us that the ALJ *considered* all
the relevant factors.

As in Andersen, the court would note that the ALJ's cursory

treatment of the medical source opinions does not indicate that

the ALJ considered all the relevant factors. The ALJ failed to

discuss the length of the treatment relationships, the frequency

of examination, and the nature and extent of the treatment

relationships. On remand, the ALJ shall consider all the

relevant factors set out in the regulations.

**IV.  Did the ALJ err in finding at step two that plaintiff's mental impairments of mood disorder and borderline intellectual functioning were not severe?**

At step two, the ALJ found that plaintiff's mental impairments were not severe.  In support of his finding, he stated:

> The claimant was given a Global Assessment
> Functioning (GAF) of 58 and a GAF of 51-60
> indicates moderate symptoms or moderate
> difficulty in social, occupational or school
> functioning according to the Diagnostic and
> Statistical Manual of Mental Disorders,
> Fourth Edition. Although the claimant's GAF
> was in the moderate range in December 2008,
> it had risen since his intake the month
> previous (GAF at 55 on admission) and it
> appears that his GAF will continue to
> increase to the mild range well before the
> required 12 month duration. (Exhibit 21 F)

(R. at 18).[4]

Exhibit 21F is the mental health treatment records from Comcare for November and December 2008 (R. at 713-723).  They

---

[4]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect
> and circumstantial speech, occasional panic
> attacks) **OR moderate difficulty in social,
> occupational or school functioning** (e.g., few
> friends, conflicts with peers or co-workers).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

show that plaintiff, on the admission date of November 18, 2008 had a GAF score of 55 (R. at 716). On December 5, 2008, a treatment record shows that his GAF had dropped to 52 (R. at 720). Treatment records of December 23, 2008 show contradictory GAF scores, one indicates a GAF on that date of 52 (R. at 722), while another record on the same date shows a GAF score of 58 (R. at 723).

Thus, it is not clear, as the ALJ asserts, that his GAF scores had risen since the initial intake. The GAF score in fact declined from November 18, 2008 to December 5, 2008. It is not clear if the GAF score increased or remained the same on December 23, 2008.

Furthermore, the ALJ stated that "it appears that his GAF will continue to increase to the mild range well before the required 12 month duration" (R. at 18). However, there is no medical evidence to support that assertion. An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). In the absence of any evidence that plaintiff's GAF score would continue to improve, the ALJ erred by asserting that it would continue to improve to the mild range within 12 months.

However, it should also be noted that because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities. See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004). GAF scores are not considered absolute determinants of whether or not a claimant is disabled, or whether the claimant has a severe impairment. Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

Furthermore, the burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. Wall v. Astrue, 561 F.3d 1048, 1052 (2009). It is not clear from the record that plaintiff's mental impairments significantly limit his ability to perform basic work activities. Therefore, on remand, plaintiff must point to evidence that establishes that he has a severe mental impairment that significantly limits a claimant's ability to perform basic work activities.

**V. Other issues raised by the plaintiff**

Plaintiff has raised other issues in his brief, including,

but not limited to, the ALJ's consideration of plaintiff's credibility.  The court will not reach these remaining issues because they may be affected by the ALJ's resolution of the case after giving adequate consideration to the medical opinion evidence as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, on remand, the ALJ should consider a report from Raye Street, program coordinator for adult literacy, that plaintiff is "almost completely illiterate" (R. at 261), determine what weight should be accorded to that opinion in light of other evidence in the case, and determine its impact, if any, on plaintiff's ability to work.

**VI.   Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its

conclusion.  Sisco v. United States Dept. of Health & Human
Services, 10 F.3d 739, 746 (10th Cir. 1993).  A key factor in
remanding for further proceedings is whether it would serve a
useful purpose or would merely delay the receipt of benefits.
Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545
(10th Cir. 1987).  Thus, relevant factors to consider are the
length of time the matter has been pending, and whether or not,
given the available evidence, remand for additional fact-finding
would serve any useful purpose, or would merely delay the receipt
of benefits.  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir.
2006).  The decision to direct an award of benefits should be
made only when the administrative record has been fully developed
and when substantial and uncontradicted evidence in the record as
a whole indicates that the claimant is disabled and entitled to
benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir.
1986).

     This case has now been pending for 7 years (plaintiff filed
her disability claim on January 29, 2004 (R. at 31)).  The next
factor for the court to consider is whether or not, given the
available evidence, remand for additional fact-finding would
serve any useful purpose, or would merely delay the receipt of
benefits.  The court should determine whether substantial and
uncontradicted evidence in the record as a whole indicates that
the claimant is disabled and entitled to benefits.

The court found that the ALJ erred by failing to offer any explanation for not including in his RFC findings certain limitations from three medical sources. However, the medical opinion evidence regarding plaintiff's limitations varies widely; the court cannot say that substantial and uncontradicted evidence in the record as a whole indicates that plaintiff is disabled and entitled to benefits. Therefore, the court concludes that a remand to properly consider the medical evidence would serve a useful purpose in this case.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of March 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge